IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MONTIE L. SPURGEON, JR.                                                                    PLAINTIFF

        v.                              Civil No. 13-5289

SGT. T. MUGGEY; CPL. SORREL;
and CORPORAL MULVANEY                                                              DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is not currently incarcerated. The events that are the subject of this case occurred while Plaintiff was incarcerated in the Washington County Detention Center (WCDC). Specifically, Plaintiff maintains the Defendants failed to protect him from attack by fellow inmates.

Defendants filed a Motion for Summary Judgment (Doc. 46). A hearing was held on July 21, 2015, to allow the Plaintiff to orally respond to the Motion. At the conclusion of the hearing, the Motion was taken under advisement pending preparation of this report and recommendation.

**1. Background**

At the hearing, the Court heard the testimony of the Plaintiff, Corporal Sorrel, and Corporal Mulvaney.

**Plaintiff's Testimony**

Plaintiff testified that he was sexually assaulted by fellow inmate Robert Randall on November 27, 2013. The first incident occurred in the morning. Plaintiff testified Inmate Randall slapped him on the buttocks and said "give me some of that a--" and would not leave

him alone. At the time, both inmates were housed in N pod and were walking in circles in the day room area of the pod. Defendants' Exhibit (hereinafter Defts' Ex.) 1(E)(a DVD). Plaintiff testified he pushed the intercom button to get assistance and Inmate Randall attempted to talk over him. Plaintiff was told someone would be sent to the pod. Officer Arnold arrived and asked Plaintiff what the problem was but did nothing to separate Plaintiff and Inmate Randall. Plaintiff initially believed the officer who came to the pod was Corporal Sorrel but discovered that it was Officer Arnold.

Plaintiff testified that around lunch time Inmate Randall continued to give him problems. Inmate Randall was wearing white trustee pants over his regular pants. According to Plaintiff, Inmate Randall went into cell 13 and pulled off his inner pants. Inmate Randall tied handmade soap into the pants and then swung the pants at Plaintiff's head. Plaintiff was not hit.

Plaintiff pushed the silver intercom button and told Deputy McGual that a sergeant should be sent to N pod "right now." Plaintiff testified that Inmate Randall asked Plaintiff not to "tell on him" and called the Plaintiff a "snitch punk." According to Plaintiff, everyone in the barracks wanted Inmate Randall to swing on the Plaintiff and fight him.

After Plaintiff pushed the intercom button, he testified that Officer Arnold came to the pod door and looked in. Officer Arnold did not say anything. Deputy McGual came in a short time later.

Plaintiff testified that Corporal Mulvaney told Deputy McGual to take the Plaintiff to a room and take a statement. Deputy McGual did take a statement but according to Plaintiff did not follow proper procedure and just made notes on a plain piece of paper. No charges were ever brought against Inmate Randall.

-2-

Plaintiff testified that Corporal Mulvaney asked him about the weapon Inmate Randall used. According to Plaintiff, Corporal Mulvaney said that soap could not be used as a weapon. Plaintiff felt like Corporal Mulvaney "blew the whole thing off." Plaintiff felt there should have been an entry made in the computer so that the two would not be housed together. Plaintiff testified that he was not moved to S pod until some time that evening.

Plaintiff testified he sustained no physical injury as a result of Inmate Randall's actions. However, he stated that he suffered mental anguish. He indicated that incarceration makes it difficult because you are locked into an area with the person who is causing problems; and, when you inform staff there is going to be a problem, they ignore you.

After he had been in S pod for one-and-one-half to two weeks, Plaintiff testified Inmate Randall was moved into S pod. Inmate Randall wanted to "box" again. Plaintiff testified he went directly to the intercom button. He talked to Sergeant Muggy who said there was nothing in the computer indicating Plaintiff had problems with Inmate Randall. Plaintiff testified he wrote grievances about Inmate Randall being moved into the same pod he was in. Plaintiff testified that there was a group of inmates who "ran together" with Inmate Randall.

Grievances are submitted on an electronic kiosk located in the day room area of the pod. Plaintiff testified that this makes it easy for people to stand "over" you and see what you are writing.

On January 16, 2014, Plaintiff submitted a request to make an official statement about the November 27, 2013, incident with Inmate Randall. Defts' Ex. 1(D) at pg. 29. After shift change on January 17, 2014, Corporal Sorrel pulled Plaintiff out of the pod so that he could make a statement. Plaintiff testified that after he completed the statement he told Corporal Sorrel about

-3-

the problems he was having with Inmate Phillips and stated there was going to be a fight. Plaintiff asked to be moved to B pod. According to Plaintiff, Corporal Sorrel responded that Plaintiff should not have to worry because Inmate Phillips was a "pussy." Plaintiff was put back into S pod. Plaintiff also testified that Sergeant Muggy told him that "he would go where they told him to."

Plaintiff testified he submitted a grievance on January 17, 2014, when inmate Trevor Phillips made threats against him. Jail records indicate that Plaintiff submitted a grievance on January 17, 2014, at 10:57 a.m. stating he was having issues with inmates because of a lawsuit he had filed. Defts' Ex. 1(D) at pg. 29. Sergeant Muggy responded that he was not aware of any lawsuits the Plaintiff had filed and asking what problems he was having, and with who, so it could be taken care of. Id.

Plaintiff submitted another grievance at 11:53 a.m. indicating he was having "issues with [c]ertain inmates." Defts' Ex. 1(D) at pg. 29. Plaintiff testified he did not put in any inmate names because people were standing at the kiosk looking over his shoulder. In response to the grievance, Sergeant Muggy again asked who the inmates were. Id. The next kiosk entry made by Plaintiff was: "God Bless." Id. Plaintiff testified that you enter "God Bless" in the kiosk to find out what time it is.

The following day, January 18, 2014, about two hours before he was assaulted, Plaintiff testified he submitted a grievance. According to jail records, Plaintiff submitted a grievance at 11:46 a.m. on January 18, 2014. Defts' Ex. 1(D) at pg. 29. He said he needed to be moved because he was about to be jumped. Id.

Approximately five minutes before he was assaulted, Plaintiff testified he told an officer on duty that it was "fixing to happen." Phillips then struck the Plaintiff in the mouth. They began fighting. Plaintiff testified he tried twice to get help via the intercom but no one responded either time he depressed the button. Plaintiff suffered an injury to his hand. Defts' Ex. 1(D) at pg. 31. He believed something was broken or torn. Id. His hand bothered him for about six weeks. He also testified he had a cut lip.

Deputy L. Reese completed an incident report that day. Defts' Ex. B at pgs. 13-14. Deputy Reese reported that during the morning Deputy Rose advised him that there might be trouble with Inmate Phillips in S block. Id. In response, Deputy Reese started watching the block and saw nothing to indicate there were going to be any issues. Id. At 10:58 a.m., Deputy Reese noticed that the intercom button inside S block had been pressed but no one was standing by the door when he looked. Id.

Deputy Rose then reported a fight going on in S block. Deputy Cuzick, Deputy Rose, and Deputy Reese went to S block. Defts' Ex. B at pgs. 13-14. Deputy Reese observed Inmate Phillips and the Plaintiff fighting in the shower area of the pod. Id. Inmate Phillips was moved to L block. Id. Review of video footage showed it was Inmate Phillips who started the fight. Id. Plaintiff reported that Inmate Phillips had friends in S Block and Phillip was moved to R block. Id.

At 1:05 p.m., Sergeant Muggy responded to Plaintiff's grievance noting that he had been moved to the R pod. Defts' Ex. 1(D) at pg. 29. At 3:05 p.m., Plaintiff submitted another grievance. Id. at pg. 30. Plaintiff indicated he had been saying for two days that he was going to have problems in S block. Id. He conceded he did not identify by name the inmate or inmates

AO72A
(Rev. 8/82)

he was having problems with. Id. However, he felt his warnings should not have been ignored by staff. Id. He also asked to speak with Corporal Mulvaney about filing charges and making an official statement. Id.

On January 22nd, Plaintiff submitted a grievance stating he still had not heard anything from Corporal Mulvaney or anyone about completing an official statement in order to press charges and properly document what had occurred. Defts' Ex. 1(D) at pg. 30. Plaintiff testified that Inmate Phillips was put back into the block with him about a week later by Corporal Mulvaney.

**Corporal Jessie Sorrel's Testimony**

Corporal Sorrel testified that he recalled pulling the Plaintiff out of the pod into the multi-purpose room after 8:00 p.m. on January 17, 2014. The multi-purpose room has a video camera but there is no audio. He talked to the Plaintiff about his allegation that he was having problems in the pod. Corporal Sorrel testified the Plaintiff stated that he wanted to get away from the pod because of childish behavior. Corporal Sorrel testified that the Plaintiff denied feeling threatened or having any problems at that time. Corporal Sorrel testified he told the Plaintiff to put in a written request and on the next shift[1] he would see if Plaintiff could be moved.

Corporal Sorrel testified Plaintiff did not provide him with any inmates names. Corporal Sorrel did not recall saying that Plaintiff did not have to worry about Inmate Phillips. Corporal Sorrell stated that Inmate Phillips was prone to fight and had been in administrative segregation as a result of being disciplined just prior to the incident with the Plaintiff. If Plaintiff had said that he felt threatened, Corporal Sorrel testified he would not have left Plaintiff in the pod.

---

[1] Corporal Sorrel worked a 6 p.m. to 6 a.m. shift.

AO72A (Rev. 8/82)

Corporal Sorrel testified that you did not need permission to move an inmate to a different pod if he felt threatened. If there were problems between inmates, Corporal Sorrel testified you separated the inmates. If an inmate feels threatened but does not know the name of the inmate threatening him, Corporal Sorrel testified you could still move the inmate. Jail personnel have to fill out a report whenever this occurs.

On January 18th, when he came on duty Corporal Sorrel recalled being advised about the altercation between the Plaintiff and Inmate Phillips. Corporal Sorrell could not recall if Plaintiff had any injuries as a result of the altercation.

With respect to the kiosks, Corporal Sorrel testified they faced out and that anyone behind the person using the kiosk can read what is being written. Corporal Sorrel testified that people watching what is being written had caused problems. To avoid this problem, Corporal Sorrel indicated that inmates sometimes just asked to speak to someone.

Corporal Sorrel testified there are nine cell blocks with kiosks. He testified that inmates may submit a variety of requests via the kiosks including requests for medical care, grievances. and commissary orders. To view what is written each category of documents must be accessed separately. Officers do not immediately see what is entered into the kiosk. When he is on duty, Corporal Sorrel stated he usually checked the kiosk entries at about 8:00 p.m. and then several more times until his shift ended at 6:00 a.m. Corporal Sorrell testified that he did not have access to grievances. When an officer saw Plaintiff's 11:46 a.m. entry that he was about to be jumped, Corporal Sorrel testified the Plaintiff should have been pulled out of the pod.

AO72A
(Rev. 8/82)

**Corporal Mulvaney's Testimony**

Corporal Mulvaney testified that he only had a vague memory of Inmate Randall putting soap into his pants and trying to strike the Plaintiff. Corporal Mulvaney indicated that he spoke with the Plaintiff twice about the incident: the first time to verify dates and times; and the second time to inform the Plaintiff that the prosecutor was not going to file charges against Inmate Randall.

Prior to the incident, Corporal Mulvaney testified he was not aware of any issues between the Plaintiff and Inmate Randall. With respect to inmate movements, Corporal Mulvaney testified that you look for an alert notification regarding any inmates who should not be housed together. When someone is moved because of problems with another inmate, a notification should be entered into computer with respect to both inmates.

**2. Applicable Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient

evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

"Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Holden v. Hirner, 663 F.3d 336, 340-41 (8th Cir. 2011)(citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)). To prevail on a failure to protect claim, Plaintiff must first prove he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. "This is an objective requirement to ensure the deprivation is a violation of a constitutional right." Holden, 663 F.3d at 341 (citation omitted). Second, Plaintiff must "establish the prison officials were deliberately indifferent to inmate health or safety. This is a subjective requirement, mandating the prisoner prove the official both knew of and disregarded an excessive risk to inmate health or safety." *Id*. (citation and internal quotation marks omitted).

Defendants maintain they are entitled to judgment in their favor for the following reasons: (1) there is no evidence they were deliberately indifferent to Plaintiff's safety needs; and (2) Defendants are entitled to qualified immunity.

### (A). First Incident with Inmate Randall (slap on the buttocks)

None of the named Defendants had knowledge of any problems between Plaintiff and Inmate Randall until after this incident occurred. Plaintiff therefore cannot establish that the Defendants were deliberately indifferent to his health or safety. He cannot prevail on his failure to protect claim regarding this incident.

-9-

### (B). Second Incident with Inmate Randall (soap in pants)

No notation was made in the computer regarding Inmate Randall slapping Plaintiff on the buttocks. Prior to Inmate Randall swinging the pants at the Plaintiff, the named Defendants had no knowledge of any problems between the Plaintiff and Inmate Randall.

The only request Plaintiff submitted on the kiosk system prior to this incident was one in which he said he wanted to be moved to administrative segregation because he was tired of everyone in the jail and wanted to be isolated before he snapped on someone. Defts' Ex. 1(D) at pg. 12. Given this, Plaintiff cannot establish that the Defendants were deliberately indifferent to his health or safety. Following this incident, Inmate Randall and the Plaintiff were moved to separate pods.

### (C). Third Incident with Inmate Randall (move into S pod)

After he had been in S pod for a week-and-a-half or two weeks, Plaintiff testified that Inmate Randall was moved into the pod. When Plaintiff objected, Sergeant Muggy told the Plaintiff that there was nothing in the computer indicating he and Inmate Randall should not be housed together. No physical confrontation took place but Plaintiff testified that Inmate Randall had verbally threatened to start another fight. Plaintiff cannot establish that the Defendants were deliberately indifferent to his health or safety.

### (D). Incident with Inmate Phillips

With respect to this incident, I believe there are genuine issues of fact that preclude summary judgment in favor of Corporal Sorrel and Sergeant Muggy. Specifically, with respect to Corporal Sorrell his testimony that Plaintiff did not say he felt threatened is in direct contradiction to the Plaintiff's own testimony. At the summary judgment stage the Court is not

free to make credibility determinations. New v. Denver, 787 F.3d 895, 898 (8th Cir. 2015). "While a jury may credit [Corporal Sorrel's] assertions and disbelieve [the Plaintiff] at trial, it is not our function to remove the credibility assessment from the jury." Johnson v. Carroll, 658 F.3d 819, 827 (8th Cir. 2011).

Plaintiff testified he submitted two grievances on January 17, 2014, saying he was having problems with other inmates. While the grievances did not name the inmates at issue, Plaintiff explained this was because the kiosks were out in the open and anyone behind you could read what you were writing. Defendants agreed that this could discourage inmates from naming the other inmates or from submitting written grievances.

Moreover, Plaintiff testified that he did advise Corporal Sorrell that evening that he and Inmate Phillips were having problems and there was going to be a fight between the two of them. Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998)(in assessing prison official's response to known risk to inmate safety, deliberate indifference is something more than negligence but less than actual intent to harm). The following day, January 18, 2014, Plaintiff submitted another grievance stating he was about to be jumped and asked to be moved. This grievance was addressed by Sergeant Muggy. Norman v. Schuetzle, 585 F.3d 1097, 1104 n. 1 (8th Cir. 2009)(accepting allegation that warden was aware of fact supporting inmate's failure-to-protect claim through reading grievance about it). And, five minutes before the fight occurred, Plaintiff testified he told the officer on duty that a fight was about to happen. See e.g, Young v. Selk, 508 F.3d 868, 873 (8th Cir. 2007)(question of fact when inmate testified he told both the officials that he had been threatened by another inmate, that his circumstances were urgent, that he needed to be moved immediately, and that it was an emergency). Neither Corporal Sorrel or Sergeant

AO72A
(Rev. 8/82)

Muggy responded to the alleged risk to the Plaintiff. Farmer v. Brennan, 511 U.S. 825, 844 (1994)("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm is ultimately not averted.").

Corporal Mulvaney's involvment with this incident occurred after the incident. He therefore cannot be held liable on the failure to protect claim.

### (E). Qualified Immunity

Defendants also maintain they are entitled to qualified immunity. Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). It "is a means of protecting government officials from vexatious lawsuits questioning the discretionary performance of their duties." Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989).

Analyzing a claim of qualified immunity requires a two-step inquiry. Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012). "An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Robinson v. Payton, 791 F.3d 824, 828 (8th Cir. 2015). "Unless the answer to both these questions is yes, the defendants are entitled to qualified immunity." Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009). At the summary judgment phase, a district court is required to view the genuinely disputed facts in the light most favorable to the non-moving party, provided the record does not so contradict the facts as to render so viewing them

-12-

unacceptable to any reasonable juror. O'Neil v. City of Iowa City, 496 F.3d 915, 917 (8th Cir. 2007).

Clearly established law holds that "deliberate indifference" to a prisoner's safety needs violates the Eighth Amendment. Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010). However, the Court must do more than

> determine that the law was clearly established in the abstract. We must instead examine the information possessed by the government official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law. This is not to say that an official action is protected by qualified immunity unless the very action in question was previously held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.

Id. (internal quotation marks and citations omitted).

With respect to the claims involving Inmate Phillips, I find Defendants Sorrel and Muggy are not entitled to qualified immunity. A reasonable official, knowing all the relevant facts, viewed in the light most favorable to the Plaintiff, including Inmate Phillips propensity of causing trouble, would have known that their actions violated clearly established law.

### 4. Conclusion

For the reasons stated, I recommend that the Motion for Summary Judgment (Doc. 46) be **GRANTED** in part and **DENIED** in part. Specifically, the Motion (Doc. 46) should be **GRANTED** with respect to: all claims stemming from the November 2013 incidents involving fellow Inmate Randall; and all claims against Corporal Mulvaney. The Motion (Doc. 46) should be **DENIED** with respect to the failure to protect claims against Corporal Sorrel and Sergeant Muggy stemming from the January 2014 incident with fellow Inmate Phillips.

In the event this report and recommendation is adopted, this case is ready to be scheduled for a jury trial on the remaining failure to protect claims.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of September 2015.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE